UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

____

JERRY LEWIS MITCHELL,

        Plaintiff,                      Case No. 2:20-cv-249

v.                                            Honorable Janet T. Neff

REBECCA HORROCKS et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Neubecker for failure to state a claim.

**Discussion**

I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Prison Counselor Rebecca Horrocks and Lieutenant Hearing Officer Unknown Neubecker.

Plaintiff alleges that he was transferred from the Chippewa Correctional Facility (URF) to MBP following an incident which occurred on September 13, 2020. Plaintiff fails to specify the nature of the incident, but states that he received two misconduct charges as a result of the September 13, 2020, incident and was sentenced to 45 days of sanctions. While serving sanctions, Plaintiff received another misconduct and was sentenced to an additional 30 days of sanctions.

On October 9, 2020, Plaintiff contracted COVID-19. Plaintiff verbally complained to the Warden about shower and cell cleaning. On October 24, 2020, Plaintiff filed a grievance and again spoke to the Warden. On October 29, 2020, Plaintiff filed another grievance and spoke to the Warden a third time, which resulted in the Warden reestablishing once a week phone calls for segregation inmates.

On November 2, 2020, Plaintiff asked Defendant Horrocks if his J-pay had been turned off because he had not received any J-pays from his family or lawyer since October 25, 2020. Defendant Horrocks stated that she had turned off Plaintiff's J-pay because he was always complaining. Defendant Horrocks then told Plaintiff that he should have thought about the consequences before he wrote grievances on staff. Plaintiff objected that Defendant Horrocks was taking it personally, when all he had been trying to do was keep things clean during his battle with COVID-19. Defendant Horrocks said that maybe next time, Plaintiff would not destroy the unit.

2

Plaintiff denied any such action and then asked why his phone was turned off. Defendant Horrocks said that she was in charge of the unit and would see about his phone rights. Later that day, Plaintiff received a note from MBP Administration saying that J-pay was a privilege. Plaintiff then filed a grievance on Defendant Horrocks.

On November 11, 2020, Defendant Horrocks wrote Plaintiff a class II misconduct for insolence. On November 17, 2020, Corrections Officer Simpson told Plaintiff and another inmate that Defendant Neubecker said it would be best if they did not attend their misconduct hearings. Plaintiff disregarded this warning and during the hearing, Defendant Neubecker refused to record Plaintiff's full statement. Defendant Neubecker told Plaintiff that he did not believe that Defendant Horrocks would retaliate against him, and that he had known her for over twenty years. Plaintiff was found guilty and received 30 days' loss of privileges.

Plaintiff claims that the other inmate who had been threatened, Inmate Williams #608523, decided not to attend his hearing and only received 10 days' loss of privileges. Plaintiff attaches a copy of Inmate Williams' hearing report, showing that Williams was charged with insolence on the same day as Plaintiff, that his hearing was held on the same date, and that Williams did not attend the hearing (ECF No. 1-4 at PageID.20).

Plaintiff claims that Defendants Horrocks and Neubecker retaliated against him and that Defendant Neubecker violated his Fourteenth Amendment due process rights. Plaintiff seeks compensatory and punitive damages as well as equitable relief.

II.     **Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Due process

Plaintiff asserts that Defendant Neubecker violated his Fourteenth Amendment due process rights when he had a Corrections Officer tell Plaintiff that he should not attend his Class

4

II misconduct hearing, when he failed to record Plaintiff's full statement, and when he imposed a sanction that was three times longer than another inmate's, solely because Plaintiff attended his hearing.

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted), *partially overruled on other grounds by Sandin v. Conner,* 515 U.S. 472 (1995).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

Under Michigan Department of Corrections Policy Directive 03.03.105 ¶ B (eff. July 1, 2018), a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. *See* Policy Directive 03.03.105, ¶ AAAA. The Sixth Circuit has routinely held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his Class III misconduct conviction for insolence.

## IV. Retaliation

Plaintiff claims that Defendants Horrocks and Neubecker retaliated against him, in violation of the First Amendment. Plaintiff states that Defendant Horrocks turned off his phone and J-pay and wrote a false misconduct against Plaintiff for filing grievances and making verbal complaints.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the

defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). The right to file grievances is protected only insofar as the grievances are not "frivolous." *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct," *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012), and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002). Therefore, it is clear that Plaintiff's conduct in filing grievances is protected conduct for purposes of a retaliation claim.

Moreover, Plaintiff's verbal complaints are also protected conduct. An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298-99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984-85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific

7

form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741).

Plaintiff has also alleged facts showing that Defendant Horrocks took an adverse action against him by suspending his phone and J-pay privileges and writing a Class II misconduct on him. Even seven days' loss of privileges—which includes loss of the rights to use the exercise facilities, to attend group meetings, to use the telephone, to have visitors, to access the general library, and to access the activity room—amounts to adverse action. *Maben*, 887 F.3d at 266-67 (quoting *Hill v. Lapin*, 630 F3d 468, 474 (6th Cir. 2010) (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse")). The *Maben* court noted the contrary holding in *Ingram v. Jewell*, 94 F. App'x. 271, 273 (6th Cir. 2004) (citing *Thaddeus-X*, 175 F.3d at 396-97) (14 days' loss of privileges does not constitute an adverse action), and, because *Maben* was a published opinion, it effectively overruled *Ingram*. Therefore, the Court concludes that Plaintiff has stated a retaliation claim against Defendant Horrocks.

Plaintiff contends that Defendant Neubecker retaliated against him for attending his Class II misconduct hearing by giving Plaintiff three times more in sanctions than those given to another prisoner with an identical charge who heeded Defendant Neubecker's warning not to attend the hearing. As noted above, Plaintiff attaches a copy of Inmate Williams' hearing report, which shows that he was charged with insolence on the same day as Plaintiff, that his hearing was held on the same date, and that Williams did not attend the hearing (ECF No. 1-4 at PageID.20). The Court notes that Plaintiff was engaged in protected conduct when he attended the hearing, that loss of privileges is considered adverse, and that there is some evidence showing that the adverse conduct was motivated by a desire to retaliate against Plaintiff for attending the hearing.

Therefore, Plaintiff's retaliation claim against Defendant Neubecker may not be dismissed on initial review.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's Fourteenth Amendment due process claim against Defendant Neubecker will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Plaintiff's First Amendment retaliation claims against Defendants Horrocks and Neubecker remain in the case.

An order consistent with this opinion will be entered.

Dated:   February 19, 2021                           /s/ Janet T. Neff
                                                    Janet T. Neff
                                                    United States District Judge